UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GUSTAVO DAVIS, | Case No. 5:25-cv-00330-DTB |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT** |
| v. | |
| OREILLY AUTO ENTERPRISES, LLC, et al., | |
| Defendants. | |

## I.

## PROCEEDINGS

On December 30, 2024, Plaintiff filed a Complaint in Riverside County Superior Court, naming as Defendants O'Reilly Auto Enterprises, LLC ("O'Reilly"), Doreen Corrales ("Corrales"), an employee of defendant O'Reilly, and DOES 1 through 10.  (Docket No. 1-2 at 3-36).[1]  The gist of the Complaint is that on September 6, 2023, defendant O'Reilly wrongfully terminated Plaintiff, who had worked for defendant O'Reilly as a stocker and Quality Assurance representative

---

[1] For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

1

since July 2021, based on Plaintiff's alleged failure to take a post-accident drug test, and that defendant Corrales, the Human Resources representative for defendant O'Reilly, harassed Plaintiff ("motivated in part, by Plaintiff's history of making complaints of sexual harassment"),  by accusing him of refusing to take the post-accident drug testing, by yelling at him post-termination for being on the workplace premises, and by threatening him post-termination with arrest if he returned to the workplace premises.  (Docket No. 1-2 at 6-20).  The  Complaint alleges nine causes of action:   (1) Disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) failure to reasonably accommodate in violation in violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4) discrimination based on sexual orientation in violation of FEHA; (5) harassment based on disability in violation of FEHA; (6) harassment based on sexual orientation in violation of FEHA; (7) retaliation in violation of FEHA; (8) failure to take all reasonable steps to prevent discrimination, harassment, and retaliation in violation of FEHA; and (9) wrongful termination in violation of public policy.  (Docket No. 1-2 at 1, 21-35).  All causes of action were alleged against defendant O'Reilly, but only the fifth and sixth causes of action were alleged against defendant Corrales.  (Id.).  In the Prayer for Relief, the Complaint seeks, among other things, general damages, special damages, consequential and incidental damages, "economic damages, including loss of past and/or future earning and/or benefits," "past and/or future non-economic damages, including emotional distress, pain and suffering, [and] physical injuries," punitive and/or exemplary damages, and attorneys' fees, all according to proof.  (Id. at 36).

/ / /

/ / /

/ / /

/ / /

2

On February 5, 2025, defendant O'Reilly filed a Notice of Removal, removing this action from the Riverside County Superior Court to this Court, based on allegations that the amount in controversy exceeded $75,000.00 and that there was diversity jurisdiction because defendant Corrales was fraudulently joined. (Docket No. 1).[2]

On February 28, 2025, Plaintiff filed a Motion to Remand Action to State Court ("Motion to Remand") on the grounds that defendant O'Reilly fails to show that Plaintiff's damages exceed $75,000.00 as of the date of the removal of the action and that defendant Corrales was fraudulently joined. (Docket No. 8). On March 28, 2025, defendant O'Reilly filed an Opposition to the Motion to Remand ("Opposition"). (Docket No. 10). On April 9, 2025, Plaintiff filed a Reply in support of the Motion to Remand. (Docket No. 11).

Thus, this matter is ready for decision. For the reasons stated below, the Court denies the Motion to Remand.

## II.

## LEGAL AUTHORITY

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A district court has original jurisdiction of a civil action where the "matter in controversy exceeds the sum or value of $75,000, exclusive or interest and costs," and the matter in controversy is between "citizens of different States[.]" 28 U.S.C. § 1332(a); see also Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009) ("As for diversity jurisdiction, federal district courts have jurisdiction overs suits for more than $75,000 where the

---

[2] At that time, only defendant O'Reilly had been served with the Summons and Complaint. (See Docket No. 1-2 at 2).

3

1    citizenship of each plaintiff is different from that of each defendant.") (citing 28

2    U.S.C. § 1332(a)).

3        A defendant may remove an action from state court to a district court if the

4    plaintiff could have originally filed the action in federal court.  28 U.S.C. § 1441(a).

5    "The notice of removal 'need include only a plausible allegation that the amount in

6    controversy exceeds the jurisdictional threshold,' and need not contain evidentiary

7    submissions."  Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785,

8    788 (9th Cir. 2018) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens,

9    574 U.S. 81, 90 (2014)).  "'Where . . . it is unclear from the face of a state-court

10   complaint whether the requisite amount in controversy is pled, the removing

11   defendant bears the burden of establishing, by a preponderance of the evidence, that

12   the amount in controversy exceeds the jurisdictional threshold.'"  Fritsch, 899 F.3d

13   at 793 (citation omitted); see also Sanchez v. Monumental Life Ins. Co., 102 F.3d

14   398, 404 (9th Cir. 1996) (when a state court complaint does not specify a particular

15   amount of damages, the removing defendant has the burden of establishing that it is

16   "more likely than not" that the amount in controversy exceeds the threshold amount);

17   Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992) ("If it is *unclear* what

18   amount of damages the plaintiff has sought, . . . then the defendant bears the burden

19   of actually proving the facts to support jurisdiction, including the jurisdictional

20   amount.") (citation omitted; emphasis in original).  "In calculating the amount in

21   controversy, a removing defendant may make reasonable assumptions based on the

22   plaintiff's complaint."  Perez v. Rose Hills Co., 131 F.3d 804, 806 (9th Cir. 2025).

23   A district court's determination about the amount in controversy is based on

24   allegations in the Complaint, the removal petition, and "'summary-judgment-type

25   evidence relevant to the amount in controversy at the time of removal.'"  Id. (citation

26   omitted).  The amount in controversy is the "amount at stake in the underlying

27   litigation."  Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648 (9th Cir.

2016); see also Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 418 (9th Cir. 2018) ("[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails."). The amount in controversy "includes damages (compensatory, punitive or otherwise)" and future attorneys' fees recoverable under a statute or contract. Fritsch, 899 F.3d at 793-94; see also Chavez, 888 F.3d at 417 ("If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them."); Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.") (citations omitted).

"Although an action may be removed to federal court only where there is complete diversity of citizenship, 28 U.S.C. §§ 1332(a), 1441(b), one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" Hunter, 582 F.3d at 1043 (citation and internal quotation marks omitted); see also Grancare, LLC v. Thrower by and through Mills, 889 F.3d 543, 548 (9th Cir. 2018) ("In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined.") (citation omitted); Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) ("[F]raudulently joined defendants will not defeat removal on diversity grounds."). "Fraudulent joinder . . . 'is a term of art.'" Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (citation omitted). Joinder is deemed fraudulent when a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." Morris, 236 F.3d at 1067 (citation omitted); see also Hunter, 582 F.3d at 1046 ("[I]f there is a possibility that a state court would find that the complaint states

a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.") (citation and internal quotation marks omitted).  "[T]he party invoking federal court jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against fraudulent joinder.'"  Weeping Hollow Avenue Trust v. Spencer, 831 F.3d 1110, 1113 (9th Cir. 2016) (citing Hunter, 582 F.3d at 1046).  A court may consider facts outside of the pleadings to determine whether joinder of a non-diverse defendant is fraudulent.  See Ritchey, 139 F.3d at 1318; see also McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) ("The defendant seeking removal of the federal court is entitled to present the facts showing the joinder to be fraudulent.").

". . . [R]emoval statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts."  Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) (citation omitted); see also Nevada v. Bank of America Corp., 672 F.3d 661, 667 (9th Cir. 2012) ("Removal statutes are to be 'strictly construed against removal jurisdiction.") (citation omitted).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Id. (citation omitted).

### III.

### DISCUSSION

A.    **The Amount in Controversy Exceeds $75,000.00.**

Plaintiff moves to remand this action to the state court based, in part, on defendant O'Reilly's failure to meet its burden of showing by a preponderance of the evidence that, as of the date of removal, the amount in controversy exceeds the required threshold of $75,000.00.  (Motion to Remand at 7, 10-14).

Defendant contends that it has provided sufficient evidence of Plaintiff's economic damages (lost past wages, lost future wages), non-economic damages (emotional distress), punitive damages, and attorneys' fees, each of which could exceed the $75,000.00 amount in controversy jurisdictional requirement. (Opposition at 9-16).

Since the Complaint does not specify the amount of damages and attorney's fees sought by Plaintiff, defendant O'Reilly bears the burden of showing the amount in controversy exceeds $75,000.00. See Fritsch, 899 F.3d at 793; Sanchez, 102 F.3d at 404; Gaus, 980 F.2d at 566-67.

      1.   Lost Past Wages.

Plaintiff contends that defendant O'Reilly's "notice of removal is severely deficient because it only summarily alleges that the amount in controversy exceeds $75,000, while alleging insufficient facts to support its assertion." (Motion to Remand at 10). While acknowledging that, in the Notice of Removal, defendant O'Reilly provided evidence of Plaintiff's alleged lost past wages -- approximately $64,064.80 from the date of termination on or about September 6, 2023 to the date of the filing of the Notice of Removal -- based on the calculation of $21.94 per hour x 40 hours per week x 73 weeks (see Docket No. 1 at 10, ¶ 30, citing Docket No. 1-1 at 2, ¶ 7; see also Opposition at 14, citing Docket No. 10-1 at 2, ¶ 4), Plaintiff argues that defendant O'Reilly fails to "take into account Plaintiff's effort to mitigate his damages by finding subsequent employment." (Motion to Remand at 11; see also Reply at 8-9).

However, since Plaintiff has not submitted any mitigation evidence, the Court is unable to consider mitigation in the calculation of the amount in controversy. See Canales v. Performance Food Group, Inc., Case No. 2:17-cv-JGB-JPR, 2017 WL 5905498, at *4 (C.D. Cal. Nov. 30, 2017) ("[The plaintiff] also argues Defendant fails to provide any evidence that she is seeking the entire lost wage amount, as she

could have offset or mitigated her damages. . . .  The Court would have considered such relevant evidence had Plaintiff presented any evidence that her amount of potential lost wages would be reduced. . . .  Since Plaintiff has not presented any such evidence, the Court finds that potential mitigation or offsets should not be included in the amount of controversy calculation.").

Therefore, the amount in controversy is, at a minimum, $64,064.80.

2.    <u>Lost Future Wages</u>.

Plaintiff contends that, in the Notice of Removal, defendant O'Reilly's calculation of Plaintiff's lost future wages (<u>see</u> Docket No. 1 at 11, ¶ 31 ["Given that the trial date has not yet been set, and because it is unknown whether Plaintiff will still be unemployed at that time, additional lost wages and benefits may accrue. Assuming Plaintiff prevails on his claims and seeks front pay wages and benefits for a period of two years (104 weeks), the future wages in controversy in this case is an additional **$91,270.40** ($21.94 per hour x 40 hours per week x 104 weeks."] (emphasis in original); <u>see also</u> Opposition at 14 (calculating Plaintiff's lost future wages for one year to be $47,390.40, based on $21.94 per hour x 40 weeks x 52 weeks)), is based solely on speculation about Plaintiff remaining unemployed. (Motion to Remand at 12).

As noted above, the Complaint specifically seeks unspecified economic damages for the loss of future earnings and/or benefits.  (Docket No. 1-2 at 36). Plaintiff may be entitled to future lost wages if he prevails in this action.  <u>See</u> <u>Wysinger v. Auto Club of S. Cal.</u>, 157 Cal. App. 4th 413 (2007) ("Under FEHA, an employee . . . may be compensated for a future loss of earnings.").  Consequently, Plaintiff's loss of future wages must be considered in the amount in controversy determination.  <u>See</u> <u>Chavez</u>, 888 F.3d at 418 ("Where, as here, a plaintiff's complaint at the time of removal claims wrongful termination resulting in lost future wages, those future wages are included in the amount in controversy.").    Defendant

O'Reilly has cited wrongful termination cases upholding awards of lost future wages for as much as four years. (See Opposition at 14). Whether Plaintiff receives one year or two years of lost future wages ($47,390.40 or $91,270.40), the amount in controversy, when including Plaintiff's lost past wages discussed above ($64,064.80), exceeds the $75,000.00 amount in controversy threshold.[3]

      3.   Emotional Distress Damages.

Plaintiff contends that defendant O'Reilly has not provided any facts or evidence to support its "unbridled speculation" in the Notice of Removal that Plaintiff will suffer emotional distress damages exceeding $75,000.00. (Motion to Remand at 12, citing Docket No. 1 at 11-12, ¶¶ 32-34).

As an initial matter, Plaintiff's suggestion that defendant O'Reilly should have provided "summary judgment type evidence" in the Notice of Removal to support the amount of Plaintiff's emotional distress damages (see Motion to Remand at 12) is unfounded. As stated above, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee, 574 U.S. at 90. "Evidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) only when the plaintiff contest, or the court questions, the defendant's allegation." Id. Since there has been no indication that Plaintiff contested or the state judge questioned defendant O'Reilly's allegations regarding Plaintiff's emotional distress damages, defendant O'Reilly was not required to provide evidence establishing the specific amount of Plaintiff's emotional distress damages.

As noted above, the Complaint seeks unspecified damages for "emotional distress [and] pain and suffering." (Docket No. 1-2 at 36). Emotional distress

---

[3] Even if the loss of Plaintiff's future wages were not included in the amount in controversy determination, the amount in controversy would still exceed $75,000, as discussed below.

damages may be considered in the amount in controversy determination.  See Kroske
v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005).  For purposes of determining
emotional distress damages, evidence of jury verdicts in other cases may be
submitted.  See id. ("In determining the amount in controversy, the district court
properly consider [the plaintiff's] answers and emotional distress damage awards in
similar age discrimination cases in Washington."); Avila v. Kiewit Corporation,
Case No. 2:19-cv-05740-MWF-JPR, 2019 WL 4729641, at *3 (C.D. Cal. Sept. 26,
2019) ("A defendant may introduce evidence of jury verdicts in other cases as
evidence of a plaintiff's potential emotional distress damages.") (citations omitted).

In the Opposition, defendant O'Reilly has introduced several cases involving
alleged disability discrimination, disability retaliation, failure to engage in the
interactive process, and/or wrongful termination, with jury verdicts for emotional
distress or noneconomic damages ranging from $150,060.00 to $3,000,000.00.  (See
Opposition at 15-16, citing six exhibits attached to the Notice of Removal; see also
Docket No. 1 at 11-12, ¶ 33-34; Docket No. 1-1 at 2-3, ¶¶ 8, 11-16).

Plaintiff argues that the Court should not rely on those cases because their
facts are not "identical to" the facts of Plaintiff's case.  (Motion to Remand at 12;
Reply at 10).  Contrary to Plaintiff's assertion, the Court, in determining the amount
in controversy, can rely on cases whose facts are analogous or similar to Plaintiff's
case.  See e.g., Kroske, 432 F.3d at 980 (finding the district court properly considered
"emotional distress damage awards in similar age discrimination cases in
Washington"); Avila, 2019 WL 4729641, at *4 (stating that "the Court will consider
*similar* cases involving disability discrimination and wrongful termination in its
amount in controversy analysis") (emphasis in original); Castillo v. ABM Indus.,
Inc., Case No. 5:17-cv-01889-AB-KKx, 2017 WL 5609791, at *3-4 (C.D. Cal. Nov.
20, 2017) ("Such cases must be factually analogous, but they need not be identical.").

Some of the cases cited by defendant O'Reilly appear to be sufficiently analogous or similar to Plaintiff's case.  In <u>Lave v. Charter Communications L.L.C.</u>, 2017 WL 3712924, a Riverside County jury found the plaintiff's former employer liable, among other things, for retaliation, disability discrimination, wrongful termination in violation of public policy, failure to remedy and/or prevent discrimination and retaliation, and intentional infliction of emotional distress, and awarded the plaintiff $575,000.00 in past noneconomic losses.  In <u>Preciado v. Alfaquir, Inc.</u>, 2016 WL 9459360, a San Bernardino County Superior Court jury found that the plaintiff's former employer was liable for disability discrimination, retaliation, failure to participate in the interactive process, failure to provide reasonable accommodation, failure to prevent discrimination and/or retaliation, wrongful termination in violation of public policy, failure to pay commission wages, and defamation, and awarded the plaintiff  $150,060.00 in compensatory pain and suffering damages.  In <u>Palma v. Rite Aid Corp.</u>, 2012 WL 3541952, a Los Angeles County Superior Court jury awarded the plaintiff, who alleged "gender, disability and medical leave termination," harassment, and infliction of emotional distress against her former employer, $1,500,000.00 for past non-economic loss and $1,500,000 for future non-economic loss.  In <u>Grodzik v. California Conservation Corps.</u>, 2010 WL 3898722, a Sacramento County Superior Court jury awarded the plaintiff, who alleged disability discrimination and retaliation and wrongful termination against her former employer, $159,152.00 for pain and suffering.

Without quantifying the exact amount of Plaintiff's emotional distress damages, and without deciding whether the facts of Plaintiff's case are sufficiently analogous or similar to the cases cited by defendant O'Reilly, the Court finds that Plaintiff's emotional distress damages are potentially substantial.  See <u>Avila</u>, 2019 WL 4729641, at *4.

/ / /

11

        4.    <u>Punitive Damages</u>.

    Plaintiff contends that the Court, in its determination of the amount in
controversy, should not consider potential punitive damages, because defendant
O'Reilly "has not provided any evidence in support of punitive damages, nor the
amount which could ever be awarded." (Motion to Remand at 13; <u>see</u> Reply at 14
["[D]efendant [O'Reilly] has provided no evidence that it is more likely than not,
i.e. <u>a preponderance of the evidence</u>, that Plaintiff will receive punitive damages if
he is successful in his underlying claims at trial. Moreover, [d]efendant [O'Reilly]
has also failed to provide any evidence of the amount of punitive damages Plaintiff
would likely receive, if any."]) (emphasis in original).

    As noted above, the Complaint seeks unspecified punitive damages. (Docket
No. 1-2 at 36). As also noted above, the amount in controversy determination can
take into account punitive damages. <u>Gibson</u>, 261 F.3d at 945. For purposes of
determining punitive damages, evidence of jury verdicts in analogous or similar
cases may be submitted. See <u>Avila</u>, 2019 WL 4729641, at *4 ("Where the plaintiff
seeks punitive damages but does not specify a particular amount, the defendant 'may
introduce evidence of jury verdicts in cases involving analogous facts' in order to
establish probable punitive damages.") (citation omitted).

    In the Opposition, defendant O'Reilly submits four cases in which juries
awarded punitive damages ranging from $120,000.00 to $5,000,000.00. (Opposition
at 16; <u>see</u> <u>also</u> Docket No. 1 at 12, ¶ 35; Docket No. 1-1 at 3, ¶¶ 10, 18-20).

    It appears that one of those cases is sufficiently analogous or similar to
Plaintiff's case. In <u>Olivas-Dean v. American Meizhou Dongpo Group Inc.</u>, 2017
WL 3531353, a Los Angeles County Superior Court jury found his former employer
guilty of wrongful termination and failure to prevent discrimination or retaliation
and awarded the plaintiff $250,000.00 in punitive damages. While a sample size of

12

one is not a particularly good indicator of the amount of punitive damages, it does tend to support a finding that the amount in controversy exceeds $75,000.00.

Without quantifying the exact numerical value of punitive damages, and without deciding whether the facts of Plaintiff's case are sufficiently analogous or similar to the cases cited by defendant O'Reilly, the Court finds that punitive damages are potentially substantial.  See Avila, 2019 WL 4729641, at *4.

5.    Attorneys' Fees.

Plaintiff contends that attorneys' fees should not be included in the amount in controversy determination: "As to attorney's fees, [d]efendant [O'Reilly] again fails to provide any evidence which can permit this Court to take into account attorneys' fees in calculating the likely amount in controversy.  Simply citing to other employment cases in which attorneys' fees were awarded, as [d]efendant [O'Reilly] has done on their notice of removal, is not sufficient evidence to support a similar award in this instance." (Motion to Remand at 14).

As an initial matter, Plaintiff's statement that "there is a split in the Ninth Circuit about whether a court should only consider attorneys' fees incurred as of the time of removal or likely to be incurred after removal" (Motion to Remand at 14) is erroneous.  See Fritsch, 899 F.3d at 793-94 (finding that the amount in controversy includes future attorneys' fees recoverable under a statute or contract); Arias v. Residence Inn by Marriott, 936 F.3d 920, 927-28 (9th Cir. 2019) (finding that, in light of Fritsch, there was no split of authority in the Ninth Circuit as to whether prospective attorneys' fees should be included in the amount in controversy determination).

As noted above, the Complaint seeks unspecified attorneys' fees.  (Docket No. 1-2 at 36).  Since in a FEHA action, like Plaintiff's, attorneys' fees are recoverable by the prevailing party, the amount in controversy determination can take into consideration attorneys' fees.  See Cal. Govt. Code § 12965; Rowell v.

13

United Parcel Service, Case No. 5:23-01002-ODW-BFM, 2023 WL 6808377, at *4 (C.D. Cal. Oct. 13, 2023). "An estimate of a potential award of attorney's fees may be based on those that have been made in similar cases." Lopez v. Healthcare Services Group, Inc., 2019 WL 1646083, at *4 (C.D. Cal. Apr. 2, 2019).

In the Opposition, defendant O'Reilly relies on three cases which involved awards of attorneys' fees: (1) Schermerhorn v. Los Angeles Unified Dist., 2006 WL 4870633, in which a Los Angeles Court Superior Court jury awarded $568,108 in attorneys' fees for the plaintiff who prevailed on a disability discrimination claim; (2) Dickinson v. Allstate Ins. Co., 2011 WL 4048838, in which an Orange County Superior Court awarded $567,222.00 in attorneys' fees for the plaintiff who alleged numerous claims, including disability discrimination, wrongful termination, retaliation, failure to engage in interactive process, and wrongful harassment; and (3) Lave v. Charter Communications L.L.C., 2017 WL 3712924, in which a Riverside County Superior Court awarded $400,800.00 in attorneys' fees for the plaintiff who prevailed on, among other things, disability discrimination, retaliation, and wrongful termination claims. (See Opposition at 11; see also Docket No. 1 at 13-14, ¶ 38; Docket No. 1-1 at 3-4, ¶¶ 16, 21, 22).

Without quantifying the exact amount of attorneys' fees, and without deciding whether the facts of Plaintiff's case are sufficiently analogous or similar to the cases cited by defendant O'Reilly, the Court finds that attorneys' fees are potentially substantial.

In the Opposition, defendant O'Reilly argues, in the alternative, that the amount in controversy will "easily" exceed $75,000.00 if Plaintiff's counsel expends on 150 hours of time on this matter at $500.00 per hour (which, according to defendant O'Reilly, is a "modest rate"). Based on 100 hours of Plaintiff's counsel's time at $300.00 per hour, see Avila, 2019 WL 4729641, at *6 ("A number of courts have held that 100 hours and an hourly rate of $300.00 is an appropriate and

14

conservative estimate for employment cases."), attorneys' fees in this case would be estimated to be at least $30,000.00.

In sum, Defendant has met his burden of showing that the amount in controversy in Plaintiff's case exceeds $75,000.00, solely based on lost past wages, lost future wages, and attorneys' fees. Defendant has also shown that emotional distress damages and punitive damages are potentially substantial.

Accordingly, the Court finds that the amount in controversy in Plaintiff's case exceeds $75,000.00.

**B.    Defendant Corrales was Fraudulently Joined.**

Plaintiff moves to remand this action to state court based, in part, on the lack of complete diversity of citizenship. (Motion to Remand at 15). According to Plaintiff, defendant Corrales was not fraudulently joined because in the Complaint, "Plaintiff stated two viable Causes of Action for Harassment (on the basis of both disability and sexual orientation) against [defendant Corrales] and there is a possibility that he will prevail on the merits in the event his case proceeds to a jury trial." (Motion to Remand at 15-16; see also Reply at 15).

Defendant O'Reilly argues that there is complete diversity in this action because, based on the allegations in the Complaint, Plaintiff has not stated an actionable harassment claim against defendant Corrales and, therefore, defendant Corrales was fraudulently joined. (Opposition at 16-22).

1.    Relevant Allegations in the Complaint.

a.    Citizenship.

The Complaint alleges that the state court has jurisdiction over this action because Plaintiff was employed in Riverside, California, defendant O'Reilly is a citizen of California or has sufficient minimum contacts in California, and defendant Corrales is a resident/citizen of California. (Docket No. 1-2 at 4, ¶¶ 3, 5-7).

/ / /

15

In the Notice of Removal, defendant O'Reilly asserted that it was a citizen of Delaware based on its state of incorporation and Missouri based on its principal place of business, and that there was diversity of citizenship between Plaintiff and defendant O'Reilly. (Docket No. 1 at 3-4, ¶¶ 10-13, citing Docket No. 1-19 at 2, ¶¶ 4-6).

Since there is no indication that Plaintiff challenged defendant O'Reilly's assertions about diversity of citizenship between Plaintiff and defendant O'Reilly in the state court, and since Plaintiff still does not argue that Plaintiff and defendant O'Reilly do not have diversity of citizenship (see Motion to Remand at 15-18; Reply at 14-17), Plaintiff appears to concede that he and defendant O'Reilly have diversity of citizenship.

b.    Defendant Corrales.

The Complaint makes the following allegations about defendant Corrales:

Shortly [after providing his workplace injury paperwork to his supervisor], Plaintiff was contacted by someone in management or Human Resources, either "Mitzy" or Doreen Corrales. The caller was angry with Plaintiff, yelling at him and accusing him of going to the wrong medical provider and refusing to take a drug test on the day of his injury. Plaintiff was shocked and confused. He told the caller he had done exactly what he was instructed to do, and that he had, in fact, taken a drug test when instructed to do so. Plaintiff is informed and believes that he was instructed to leave work immediately.

(Docket No. 1-2 at 12, ¶ 39).

Within a day or two Plaintiff was called in to the Human Resources department for a meeting. During this interview, the Human Resources representative, Doreen Corrales, was being very accusatory, alleging that Plaintiff had intentionally gone to the wrong clinic, and that he refused to take a drug test.

(Docket No. 1-2 at 12, ¶ 40).

/ / /

During the meeting, Human Resources personnel, including CORRALES, accused Plaintiff of lying about what the safety supervisor and the nurse had instructed him to do on the date of the injury. . . . The Human Resources representative accused Plaintiff of "refusing" to take a drug test in Riverside. . . . Plaintiff said he had given the medical provider the paperwork and followed their instructions. Plaintiff explained that he never refused to take a drug test, and that he did, in fact, take the drug test when asked to do so, at the Moreno Valley Clinic. After being harassed in this manner Plaintiff was sent home and told to wait for a phone call.

(Docket No. 1-2 at 12, ¶ 41).

Plaintiff is informed and believes CORRALES' harassment of Plaintiff was also motivated, in part, by Plaintiff history of making complaints of sexual harassment, and that CORRALES saw the drug testing issue as an opportunity to get rid of someone she saw as a trouble maker. Plaintiff is an openly gay married man. During his employment several of his co-workers harassed him with anti-gay comments, slurs, gossip, and insulting body language such as staring and mean looks. Plaintiff would informally complaint about the harassment. When one co-worker took things too far and would not stop the anti-gay slurs directed at Plaintiff, he was forced to make a formal complaint to CORRALES in Human Resources. This co-worker was known to be a problem employee. Plaintiff is informed and believes an investigation was conducted and the harassing co-worker was terminated. A few months later, another of Plaintiff's co-workers was making inappropriate comments about Plaintiff's sexual orientation. Plaintiff brought his complaint to CORRALES again. This time, the harassing co-worker was friendly with CORRALES. CORRALES told Plaintiff that the harassment was not such a big deal and that he should just try to avoid the co-worker. CORRALES did not want the co-worker to lose her job or be disciplined. CORRALES made Plaintiff feel that she was annoyed with his continuous allegations about sexual harassment.

(Docket No. 1-2 at 13, ¶ 42).

/ / /

/ / /

/ / /

17

Plaintiff is informed and believes that at the time he was accused by CORRALES of refusing the post-accident drug test, his second formal complaint of sexual harassment was still unresolved. Plaintiff does not know if an investigation was conducted. He just got the impression from CORRALES that she wanted to sweep the issue under the rug, and that she was tired of dealing with Plaintiff's complaints. For this reason, Plaintiff is also informed and believes that CORRALES' harassing and insulting demeanor during the drug testing issue was partially motivated by her exhaustion with Plaintiff's previous complaints. Plaintiff believes CORRALES saw the drug testing issue as an opportunity to get rid of an employee she saw as a troublemaker.

(Docket No. 1-2 at 13, ¶ 43).

A few hours after Plaintiff had already been unceremoniously fired, without notice or explanation, he received a call from the Human Resources manager, Doreen Corrales. She was very angry and yelling at him. She said, "do you understand what 'terminated' means? You're fired so you can't be on the premises anymore." . . . CORRALES threatened Plaintiff that if he ever tried to come to the workplace he would be arrested. Plaintiff told CORRALES that the Human Resources representative's accusations were false and very hurtful. Plaintiff was devastated, finding himself not only a severe life-changing physical injury, but also having lost the job he loved and took great pride in.

(Docket No. 1-2 at 14-15, ¶ 48).

2.     <u>California Law on Harassment</u>.

Under FEHA, it is unlawful for an employer or another other person to harass an employee because of, among other things, physical disability and sexual orientation. Cal. Govt. Code § 12940(j)(1). For a cause of action for harassment, a plaintiff employee must allege (1) he or she belongs to a protected group, (2) he or she was subject to unwelcome harassment, (3) the harassment was based on his or her protected group, (4) the harassment was sufficiently persuasive so as to alter the conditions of employment and create an abusive working environment, and (5)

defendants are liable for the harassment.  <u>Fisher v. San Pedro Hospital</u>, 214 Cal. App. 3d 590, 608 (1989); <u>see also</u> <u>Miller v. Department of Corrections</u>, 36 Cal. 4th 446, 462 ("[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abuse to employees because of their [protected group]").  "'[H]arassment [under FEHA] consists of a type of conduct not necessary for performance of a supervisory job.  Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.  Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job.'"  <u>Reno v. Baird</u>, 18 Cal. 640, 645-46 (1998) (quoting <u>Janken v. GM Hughes Electronics</u>, 46 Cal. App. 4th 55, 63 (1996)).  Generally, "acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather, the plaintiff must show a concerted pattern of harassment of a repeated, routine, or a generalized nature."  <u>Id.</u> at 609 (citation omitted); <u>but see</u> Cal. Govt. Code § 12923(b) ("A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment.").

      3.    <u>Analysis</u>.

Plaintiff has not stated a viable claim of harassment based on disability or sexual orientation against defendant Corrales.  The Complaint does not allege that defendant Corrales harassed Plaintiff because he belonged to a protected group, *i.e.*, because he was disabled or because of his sexual orientation.  (See Docket No. 1-2 at 28-31).  <u>Cf. Hernandez v. Elevance Health Companies, Inc.</u>, Case No. 2:23-cv-

MWF-ADS, 2023 WL 4422842, at *3 (noting that the plaintiff alleged that "she was subject to harassment by her direct supervisor . . . because she belong to [a protected] group."). The Complaint does not make clear the nature of Plaintiff's disability. The Complaint does not contain any factual allegations concerning defendant Corrales' harassment of Plaintiff based on any alleged disability.    Moreover, there are no allegations in the Complaint that defendant Corrales' harassment was sufficiently pervasive so as to alter Plaintiff's conditions of employment and create an abusive working environment.   Most of the allegations in the Complaint as to defendant Corrales appear to relate to her job performance as a Human Resources manager. (See e.g., Docket No. 1-2 at 12, ¶ 39 (possibly accusing Plaintiff of going to the wrong medical provider and refusing to take a drug test on the day of his injury and possibly instructing Plaintiff to leave work immediately), ¶ 40 (accusing Plaintiff of intentionally going to the wrong clinic and refusing to take a drug test),  ¶ 41 (accusing Plaintiff of lying about what the safety supervisor and the nurse had instructed him to do on the date of the injury, and possibly sending Plaintiff home and telling him to wait for a phone call), 13, ¶ 42 (telling Plaintiff a co-worker's harassment of him was not such a big deal and that he should just try to avoid the co-worker), 14, ¶ 48 (telling Plaintiff that he could not be on the premises after he was firing and that he would be arrested if he returned to the workplace).   In essence, the allegations in the Complaint are that defendant Corrales was brusque and unkind to Plaintiff when they interacted.  (See e.g., Docket No. 1-2 at 12, ¶ 39 (possibly being angry with and yelling at Plaintiff), ¶ 40 (being "very accusatory"), 13, ¶ 42 (making Plaintiff feel that she was annoyed with his continuous allegations about sexual harassment), ¶ 43 (being exhausted by Plaintiff's complaints about sexual

/ / /

/ / /

/ / /

20

harassment), ¶ 42), 14, ¶ 48 (being angry at and yelling at Plaintiff about his understanding of being "terminated," and possibly making false and "very hurtful accusations").  Such allegations are insufficient to state a viable claim of harassment against defendant Corrales.

In sum, Plaintiff has failed to make allegations of harassment against defendant Corrales for which defendant Corrales can be held liable.  Plaintiff has not shown there are facts supporting a conceivable or possible harassment claim against defendant Corrales.  See, e.g., Hernandez, 2023 WL 4422842, at *5 (noting that district courts have remanded cases in which the plaintiffs "could possibly state a [FEHA] harassment claim" against non-diverse individual defendant supervisors).  The possibility that Plaintiff can state a claim of harassment against defendant Corrales appears to be "fanciful."  See Barsell v. Urban Outfitters, Inc., Case No. 2:09-cv-02604-MMMJ-RZ, 2009 WL 1916495, at *3 (C.D. Cal. July 2, 2009) ("[I]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[s] the court must remand.") (citation omitted).  The fact that the Complaint contains minimal, unsubstantial, and vague allegations against defendant Corrales, allegations which are not the focal point of the Complaint, leads the Court to "strongly suspect" that defendant Corrales was sued for the purpose of defeating diversity jurisdiction.  See Hernandez, 2023 WL 4422842, at *5 (noting that the plaintiff's direct supervisor was the "focal point of the entire Complaint").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.

## ORDER

The Court therefore finds that defendant Corrales was fraudulently joined in this action.  As a result, the Court, disregarding the citizenship of defendant Corrales, see Grancare, LLC, 889 F.3d at 548, determines that there is complete diversity. Consequently, the Court finds that it has diversity jurisdiction over this action. Accordingly, Plaintiff's Motion to Remand is **DENIED.**

Dated:  May 14, 2025

_____

DAVID T. BRISTOW
United States Magistrate Judge

22